IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BEDROCK LOGISTICS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Civil Action No. 3:16-cv-2815-M |
| | § | |
| BRAINTREE LABORATORIES, INC. | § | |
| and AFFORDABLE | § | |
| PHARMACEUTICALS, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss or Transfer Venue (ECF No. 6). For the reasons stated below, the Motion is **GRANTED**.

**I.  Procedural and Factual Background**

On September 15, 2016, Braintree Laboratories, Inc. and its subsidiary Affordable Pharmaceuticals (collectively "Braintree") sent a demand letter to Bedrock Logistics, LLC, asserting that Bedrock had engaged in a deceptive kickback scheme to obtain and maintain business with Braintree. Braintree's letter included an offer of settlement to avoid litigation, with a response deadline of September 26, 2016. On September 19, 2016, instead of settling or otherwise responding, Bedrock filed suit in Texas state court, seeking collection of its invoices owed by Braintree. On September 27, 2016, Braintree filed suit against Bedrock in federal court in Massachusetts. On October 4, 2016, Braintree removed the Texas state court action to this Court. Bedrock then moved to transfer the Massachusetts action to this Court pursuant to 28 U.S.C. § 1404(a). The Massachusetts federal court denied that motion, holding that the § 1404(a) factors weighed against transfer to Texas, and rejecting Bedrock's first-to-file argument.

1

*Braintree Labs., Inc. v. Bedrock Logistics, LLC*, 16-11936-IT, 2016 WL 7173755 (D. Mass. Dec. 8, 2016). The parties will thus continue to litigate a case in Massachusetts involving the same transactions and witnesses at issue here. On November 8, 2016, Braintree moved to dismiss this case for lack of personal jurisdiction, or, in the alternative, to transfer this action to the District of Massachusetts (ECF No. 6). Bedrock argues that venue is proper here, and that the first-to-file rule prevents transfer to the District of Massachusetts.

**II.     Legal Standard**

    A.  <u>Venue Transfer</u>

A district court may transfer a civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). In the Fifth Circuit, a district court is to grant transfer if the party seeking a change of venue has demonstrated that the transferee venue "is clearly more convenient" than the plaintiff's chosen venue. *In re Volkswagen of Am., Inc.*, (*Volkswagen II* ) 545 F.3d 304, 311 (5th Cir. 2008) (en banc). A court must consider a number of private and public interest factors when analyzing a motion to transfer venue. The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, (*Volkswagen I* ) 371 F.3d 201, 203 (5th Cir. 2004). The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems regarding conflict of laws or the application of foreign law. *Id.* A plaintiff's choice of venue is not a distinct factor in the § 1404(a) analysis, but "when the transferee venue is not clearly more

convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 311. The parties do not dispute that the suit could have been filed in the District of Massachusetts. Thus, the Court must determine whether, in the interests of justice, the private and public interest factors support a transfer to the District of Massachusetts.

      B.  <u>First-to-file Rule</u>

The first-to-file rule provides that when related cases are pending in two district courts, the court with the later-filed action can refuse to hear the case, if the issues raised by both cases "substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). The first-to-file rule is a discretionary doctrine, the aim of which is to "avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). However, courts may choose not to apply the first-to-file rule when compelling circumstances exist. *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971).

Compelling circumstances exist when the first action was an anticipatory suit, meaning it was designed to preempt the second filer's suit and to secure the first filer's forum choice. *See Raz Imports, Inc. v. Luminara Worldwide, LLC*, No. 3:15-CV-02223-M, 2015 WL 6692107, at *3 (N.D. Tex. Nov. 3, 2015) (Lynn, J.). Anticipatory suits "deprive a potential plaintiff of his choice of forum, and are also one of the compelling circumstances courts cite when declining to apply the first-filed rule." *Paragon*, 2008 WL 3890495, at *4. In these cases, deferring to the plaintiff's choice of forum incentivizes and rewards the winner of a race to the

3

courthouse. *Id.* Courts thus disfavor anticipatory suits as constituting improper forum-shopping. *See Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983).

**III.     Analysis**

A court typically decides personal jurisdiction questions before considering any venue challenges. However, if there is a sound prudential justification for doing so, a court may reverse the normal order. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) (explaining that "neither personal jurisdiction nor venue is fundamentally preliminary"). Here, "resolution of the venue issue renders the personal jurisdiction problem moot and avoids the need to address constitutional questions. It is thus appropriate to consider venue as an initial matter." *Nuttall v. Juarez*, 984 F. Supp. 2d 637, 642 (N.D. Tex. 2013) (Lynn, J.).

    A.  <u>Venue Transfer</u>

    *Private Interest Factors*

        i.     <u>Relative Ease of Access to Sources of Proof</u>

Due to increasing technological advances, access to some types of proof presents a lesser inconvenience than it once did; however, the fact that technology reduces the inconvenience does not render this factor superfluous. *Volkswagen II*, 545 F.3d at 315. Braintree argues documentary evidence relevant to the alleged kickback scheme is located primarily in Massachusetts. Bedrock argues all of its evidence is located in Dallas and would have to be transported to Massachusetts. However, neither party describes specific documents that will be more accessible if the case is tried in Texas instead of Massachusetts, or vice versa. Considering the lack of specificity, this factor is neutral.

ii. <u>Availability of Compulsory Process to Secure the Attendance of Witnesses</u>

A party seeking transfer must "identify the key witnesses and general content of their testimony." *Sargent v. Sun Trust Bank, N.A.*, No. Civ. 3:03-CV-2701, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004). When a greater number of key non-party witnesses could be subpoenaed to attend a trial in the potential transferee forum, but not in the current forum, this factor favors transfer. *Internet Mach. LLC v. Alienware Corp.*, No. 6:10-CV-023, 2011 WL 2292961, at *6 (E.D. Tex. June 7, 2011). A district court may subpoena a non-party witness if he or she lives within the district or "within 100 miles of the place specified for the deposition, hearing, trial . . . " Fed. R. Civ. P. 45(c). Convenience of witnesses is the most important factor in considering transfer, and the "convenience of the non-party witnesses is accorded the greatest weight." *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No. 3:02-CV-2538, 2003 WL 21251684, at *2 (N.D. Tex. May 23, 2003).

Braintree is a Massachusetts corporation with its principal place of business in Massachusetts, and Affordable Pharmaceuticals is a Massachusetts limited liability company with its principal place of business in Massachusetts. Bedrock is a Texas limited liability company with its principal place of business in Texas. Braintree notes that the Court does not possess compulsory process over several key non-party witnesses who either conduct business in or live in Massachusetts, and may not voluntarily appear to testify at trial. They are Henry Villalobos, a former Braintree employee who allegedly received illegal kickbacks, Jim Sears, Bedrock's agent who allegedly paid the kickbacks, and Chuck McCabe, who was Bedrock's President when the parties' relationship was initiated, and who Braintree alleges may have known about the alleged kickback scheme. These three witnesses would likely be unwilling to testify about matters that are potentially significant, absent compulsory process, particularly

5

because they are all alleged to be implicated in the claimed wrongdoing. Their potential unavailability in Texas weighs in favor of transfer to Massachusetts. *See NDC Inv. LLC v. Lehman Bros.*, No. 3:05-CV-2036-D, 2006 WL 2051030, at *3 (N.D. Tex. July 21, 2006).

Bedrock makes general assertions that it would need some of its employees located in Dallas to testify, and seems to suggest they would not voluntarily do so, but in contrast to what Braintree presented, Bedrock does not specifically identify the name or location of any key witnesses, nor the subject of the testimony Bedrock would seek to obtain through compulsory process in Texas that would be unavailable for testimony in Massachusetts. None of the evidence or arguments presented by the parties indicates that any key witnesses are located in Texas. Therefore, this factor weighs strongly in favor of transfer.

      iii.      Cost of Attendance for Willing Witnesses

The convenience of witnesses who are employees of the party seeking transfer is entitled to less weight, because that party can compel its employees' testimony at trial. *Comcast Cable Commc'ns, LLC v. British Telecomm. PLC*, No. 3:12-CV-1712-M, 2012 WL 6625359, at *4 (N.D. Tex. Dec. 20, 2012) (Lynn, J.). Braintree argues it would be unduly costly and burdensome to require its Massachusetts-based employees to travel to Texas to testify about events that occurred in Massachusetts. Bedrock counters that it would be even less convenient for its Texas employees to travel to Massachusetts. However, neither party makes a comparative analysis of the costs any particular employee would incur if the Court transferred this case to Massachusetts, nor does Bedrock identify any such employees. The action pending in the District of Massachusetts presumably involves the same witnesses as this case. If the Court denied transfer, both parties' witnesses would incur travel-related costs and inconvenience traveling to

the other forum, rather than only one party's witnesses traveling for what will presumably be one trial. Therefore, this factor weighs slightly in favor of transfer.

      iv.      Other Practical Problems

The fourth private interest factor is a catch-all consideration that includes other issues that relate to whether a trial is easy, expeditious, and inexpensive. The existence of multiple lawsuits on the same issues is a significant issue in evaluating whether a transfer is in the interest of justice. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (applying the Fifth Circuit's venue test). The Massachusetts court appears further along in the litigation, as it has ruled on a motion to transfer and entered a Protective Order, and Bedrock has filed a Third Party Complaint against Henry Villalobos and James Sears, both of whom have made an appearance.[1] Because the district court in Massachusetts denied Bedrock's motion to transfer that action to this Court, denying Braintree's Motion to Transfer in this case would result in added effort and expense. Thus, this factor weighs in favor of transfer.

     *Public Interest Factors*

      i.      Administrative Difficulties Flowing From Court Congestion

The first public interest factor evaluates comparative administrative difficulties due to court congestion in the potential venues. The Northern District of Texas has one third of its active judgeships vacant, including two in the Dallas Division. Conversely, there is only one judicial vacancy in the District of Massachusetts. The vacancies in the Northern District of Texas have the potential to interfere with the expeditious and inexpensive disposition of the case, due to delay associated with judicial caseloads. *See GI Sportz, Inc. v. APX Gear, LLC*, No. 3:16-CV-

---

[1] *Braintree Labs. Inc. et al. v. Bedrock Logistics, LLC*, 16-cv-11936-IT, Dkt. Entry Nos. 50-57.

2020-D, 2016 WL 6650895, at *6 (N.D. Tex. Nov. 8, 2016). Thus, the first public interest factor weighs slightly in favor of transfer.

        ii.        <u>Local Interest in Having Localized Interests Decided at Home</u>

This factor "generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, 3:07-CV-2042-D, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008). The local interest in deciding local issues at home favors transfer to a venue that will vindicate such an interest. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

Braintree Laboratories, Inc. and Affordable Pharmaceuticals both have their principal places of business in Massachusetts. Although Bedrock is a Texas limited liability company with its principal place of business in Texas, it allegedly participated in a kickback scheme in Massachusetts, where Braintree Laboratories is incorporated. The services invoiced by Bedrock to Braintree involved picking up and shipping Braintree's products from Massachusetts. In addition, the products involved in the alleged kickback scheme are both manufactured and warehoused in Massachusetts. The only Texas connection with respect to the kickback scheme is that Bedrock sent invoices from its Texas location, to which Braintree allegedly remitted payment.

As the District of Massachusetts noted, "Massachusetts' interest in adjudicating deceptive practices suits involving Massachusetts companies is at least tantamount to, and arguably greater than, Texas' interest in adjudicating contract disputes involving Texas companies." *Braintree Labs.*, 16-11936-IT, 2016 WL 7173755, at *4 (D. Mass. Dec. 8, 2016). While the residents of the Northern District of Texas may have an interest in unpaid invoices of companies doing business in the district, Massachusetts residents have a greater interest in the resolution of a potential

8

illegal kickback scheme that occurred in Massachusetts under the state's unfair competition statute. Massachusetts has a greater interest in the outcome of this litigation than Texas, and the second public interest factor thus favors transfer.

      iii.      <u>Familiarity of the Forum with the Law that Will Govern the Case</u>

The third public interest factor addresses the familiarity of the forum with the law that will govern the case. In the District of Massachusetts, Braintree has asserted unfair competition claims against Bedrock under Massachusetts law.[2] Although the unfair competition claims will be adjudicated in Massachusetts regardless of this Court's venue decision, Massachusetts law forms the basis of Braintree's defense to Bedrock's unpaid invoice claims in this case. However, Texas law presumably forms the basis of Bedrock's claim. The third public interest factor is neutral.

      iv.      <u>Avoiding Conflicts of Law</u>

The fourth public interest factor considers the avoidance of unnecessary problems of conflicts of law or the application of foreign law. The parties do not address whether any conflicts of law are present. Both federal district courts are of equal jurisdiction, and the proceedings will be conducted under the Federal Rules of Civil Procedure. Regardless of venue, the relevant laws in this case are the Massachusetts unfair competition statute and Texas principles of contract law. Thus, the fourth public interest factor is neutral.

    B.    <u>First-to-file Rule</u>

Bedrock contends that the first-to-file rule makes transfer improper, because it filed its lawsuit in Texas state court before Braintree filed its suit in the District of Massachusetts. Braintree responds that the first-to-file rule is inapplicable here because Bedrock's suit was

---

[2] Mass. Gen. Laws Ch. 93A (2015).

9

anticipatory, and that because the motion to transfer the Massachusetts action to this Court was denied, this Court's application of the first-to-file rule would result in duplicative litigation.

The parties do not dispute that there is substantial overlap between this case and the Massachusetts case. As the Massachusetts district court found in rejecting application of the first-to-file rule to that case, Bedrock appeared to forum shop, participating "in the procedural fencing that militates against application of the [first-to-file rule] in a race to the courthouse scenario." *Braintree Labs*., 16-11936-IT, 2016 WL 7173755, at *2 (D. Mass. Dec. 8, 2016). The Court finds this rationale persuasive.

Courts often make an exception to the first-to-file rule when a plaintiff files an anticipatory suit. *Paragon*, 2008 WL 3890495, at *4. In determining whether a suit is anticipatory, courts scrutinize the parties' activities prior to the filing of a suit. In *Paragon*, the court found that based on pre-litigation communications that alerted the plaintiff to the possibility of a suit, the plaintiff filed suit before the expiration of its deadline to respond to the other party's demand. *Id.* at *5. The relevant facts of this case are virtually identical to those in *Paragon*. Here, Braintree's September 15, 2016, demand letter gave Bedrock eleven days to consider its settlement offer. During the eleven days, Bedrock filed suit against Braintree in Texas state court, seeking recovery based on the same transactions referenced in Braintree's demand. Because the Court finds Bedrock filed an anticipatory action, intended to preempt Braintree from initiating the first lawsuit, as a way to forum shop, the Court declines to apply the first-to-file rule.[3]

---

[3] Bedrock cites cases that involve a determination of which federal court obtained jurisdiction first. *See Cadle Co.*, 174 F.3d at 603. In this case, the first federal court to obtain jurisdiction was the District of Massachusetts on September 27, 2016. Braintree did not remove the Texas action to this Court until October 4, 2016. In denying transfer, the Massachusetts district court noted that using a state court filing date to determine application of the first-to-file rule could require a federal court that obtains jurisdiction by removal of an older state court action to make the § 1404(a) determination long after another federal court has obtained jurisdiction over a substantially similar federal case. *Braintree Laboratories*, 2016 WL 7173755, at *2. This Court agrees.

## IV.     Conclusion

Because five of the § 1404(a) factors favor transfer and none weigh against transfer, and because the first-to-file rule does not apply here, Braintree has shown the District of Massachusetts is clearly a more convenient venue than this Court, and Defendants' Motion to Transfer Venue is **GRANTED**. The clerk of court shall promptly transfer this case to the United States District Court for the District of Massachusetts, for possible consolidation with *Braintree Laboratories, Inc. et al. v. Bedrock Logistics, LLC*, civil action number 16-CV-11936-IT.

**SO ORDERED**.

April 28, 2017.

_____
**BARBARA M. G. LYNN**
**CHIEF JUDGE**